## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Adlynn K. Harte et al.,**

   **Plaintiffs,**

**v.**                                                    **Case No. 13-2586-JWL**

**Board of Commissioners of the**
**County of Johnson County, Kansas et al.,**

   **Defendants.**

## <u>MEMORANDUM & ORDER</u>

Plaintiffs Adlynn K. Harte, Robert W. Harte and their minor children filed suit against defendants alleging claims under the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983 and Kansas state law arising out of a SWAT-style entry and search of the Hartes' residence in Leawood, Kansas.  This matter is presently before the court on defendant Sergeant Jim Wingo's motion to dismiss plaintiffs' amended complaint for failure to state a claim on the grounds that plaintiffs have not alleged facts showing Sergeant Wingo's personal participation in the alleged constitutional violations.  As will be explained, the motion is granted but plaintiffs may file an amended complaint no later than Monday, July 14, 2014.


**Background**

Defendant Wingo's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6).  In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v.*

*Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Consistent with this standard, the following well -pleaded allegations, taken from plaintiffs' amended complaint, are accepted as true for purposes of defendant Wingo's motion.

Based on the assumption that garden stores selling hydroponic equipment sell all the necessary components for growing marijuana and are frequented by persons who grow marijuana indoors, law enforcement agencies in Kansas and Missouri instituted a highly publicized initiative known as Operation Constant Gardener in an effort to target indoor marijuana growers.  In connection with that initiative, Missouri Highway Patrol Sergeant Wingo regularly conducts surveillance of hydroponics stores in the Kansas City metropolitan area, traces customers spotted at such stores through license plate numbers to home addresses, and then farms out "tips" to area law enforcement agencies.  On August 9, 2011, Sergeant Wingo was conducting surveillance at a hydroponics store called The Green Circle.  He observed Mr. Harte leaving The Green Circle with his two children and carrying a small bag of merchandise. Sergeant Wingo noted Mr. Harte's license plate number but did nothing else with the information until late March 2012.

In March 2012, the Johnson County Sheriff's Department, in connection with Operation Constant Gardener, was preparing for a press conference scheduled on April 20, 2012—a date known as an unofficial marijuana "holiday" among drug users.  The purpose of the press conference, described in the amended complaint as the Sheriff's Department's "annual publicity

2

binge," was to tout the success of the Department's initiative by announcing that substantial quantities of marijuana had been confiscated and arrests had been made in connection with Operation Constant Gardener.  As April 20, 2012 approached, Sergeant Wingo, in late March 2012, provided Mr. Harte's license plate number to deputies with the Johnson County Sheriff's Department.  In early April 2012, deputies in the Johnson County Sheriff's Department traced Mr. Harte's license plate to his home address in Leawood, Kansas and conducted trash pulls at the Hartes' residence on April 3, April 10 and April 17, 2012.  During the search of the Hartes' trash, officers discovered "saturated plant material" which they tested for the presence of marijuana by using a field test rather than the more reliable services of the Johnson County crime lab.  According to the results of the field test, the plant material tested "presumptive" but not "conclusive" for the presence of marijuana. The field test is not intended to be used with saturated samples and it has been shown to have a 70% false positive rate, particularly with regard to food items commonly discarded in kitchen trash.  In fact, the "saturated plant material" discovered by deputies in the Hartes' trash consisted of loose tea leaves discarded by Mrs. Harte.

Based on the plant material found in the Hartes' trash and Sergeant Wingo's tip that Mr. Harte had purchased unidentified merchandise at a hydroponics store, the deputies apparently believed that a hydroponic indoor marijuana growing operation would be discovered at the Hartes' residence.  In the early morning hours of April 20, 2012, deputies executed a SWAT-style entry and search of the Hartes' residence.  The hydroponic garden discovered at the residence, however, contained only vegetable plants and an exhaustive search of the residence failed to uncover any evidence of illegal activity.  At the press conference later that afternoon,

Johnson County Sheriff Frank Denning touted the success of the raids executed in connection with Operation Constant Gardener and did not indicate that deputies came up empty-handed at any house involved in the raids.  After the raid on the Hartes' home, the deputies submitted the saturated plant material to the Johnson County Crime Lab.  Tests conducted by the lab conclusively established that the plant material was not marijuana.  The lab analyst also noted that the plant material did not resemble marijuana when viewed through a microscope or with the naked eye.

**Discussion**

In their first amended complaint, plaintiffs assert only one claim against Sergeant Wingo—a claim under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments for "conducting a search of plaintiffs' home in the absence of probable cause, by relying on a warrant that was facially deficient or which relied on materially false or misleading statements." Sergeant Wingo moves to dismiss this claim on the grounds that plaintiffs have not alleged that Sergeant Wingo personally participated in the alleged constitutional violations.  *See Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (to prevail on a claim for damages for a constitutional violation pursuant to 42 U.S.C. § 1983, a plaintiff must establish the defendant personally participated in the alleged violation).  According to Sergeant Wingo, the amended complaint does not reflect that Sergeant Wingo was involved in applying for or executing the search warrant in any respect and, in fact, the complaint demonstrates that Sergeant Wingo's involvement was limited to his observation of Mr. Harte leaving the hydroponics store on

August 9, 2011 and then forwarding Mr. Harte's license plate number to the Johnson County Sheriff's Department in late March 2012.

Of course, an officer need not apply for a warrant or execute a search personally to be liable under § 1983.  *See Poolaw v. Marcantel*, 565 F.3d 721, 732 (10th Cir. 2009) (citation omitted).  Rather, a defendant may be liable if a plaintiff can show that an "affirmative link exists" between the alleged constitutional violation and "either the officer's personal participation, his exercise of control or direction, or his failure to supervise."  *Id.* (citation omitted).  That showing can be made with "deliberate, intentional acts" that "caused or contributed to the violation."  *Id.*  In other words, direct participation is not necessary for liability to attach under § 1983:

> Any official who "causes" a citizen to be deprived of her constitutional rights can also be held liable.  The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.

*Id.* at 732-33 (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)).  Plaintiffs concede, then, that Sergeant Wingo did not apply for or execute the search warrant, but contend that he is nevertheless liable for the unconstitutional search because the search never would have occurred "but for" Sergeant Wingo's actions such that he caused or contributed to the violation.

The court disagrees and concludes that the factual allegations in the first amended complaint concerning Sergeant Wingo are insufficient to state a plausible claim for relief against Sergeant Wingo. Even if the court can reasonably infer from the amended complaint that plaintiffs' injuries would not have occurred but for Sergeant Wingo's observation of Mr. Harte at The Green Circle and his provision of Mr. Harte's license plate number to the Sheriff's

Department, Sergeant Wingo's conduct, as presently described in the amended complaint, cannot reasonably be deemed the proximate cause of the constitutional violations in light of unforeseeable acts that intervened and superseded Sergeant Wingo's liability.  *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006); *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (defendants may be liable for constitutional violations if the violations would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability).  According to the allegations in the first amended complaint, numerous factors intervened after Sergeant Wingo's conduct and there is no allegation in the complaint suggesting that such acts were reasonably foreseeable to Sergeant Wingo.  After Sergeant Wingo provided Mr. Harte's license plate number to the Sheriff's Department, deputies in the Sheriff's Department decided to pull the Hartes' trash on three occasions; decided to test the saturated plant material using a field test rather than the crime lab; decided to apply for a search warrant in the absence of any other evidence of criminal activity; and decided to execute the search in the manner alleged in the amended complaint.  In the absence of any allegation in the first amended complaint that Sergeant Wingo knew or had reason to know that the deputies would proceed as alleged, the allegations fail to state a plausible claim for relief.  This is particularly true in light of the allegation that Sergeant Wingo provided only factually accurate information to the Sheriff's Department.

As described in the amended complaint, then, Sergeant Wingo's role in the constitutional violations alleged is simply too attenuated for liability to attach under § 1983.  Without exception, the cases relied upon by plaintiffs in their response involve officials with substantially more involvement in the asserted constitutional violations than Sergeant Wingo is

alleged to have had in this case. *See Snell*, 920 F.2d at 700 (sufficient evidence demonstrated causal link between three individual defendants and constitutional deprivation alleged where two defendants participated in entry and search of residence and actively participated in investigation leading up to entry and search and third defendant signed an alter document in connection with investigation and was involved in preparation of warrant application); *Lippoldt v. Cole*, 468 F.3d 1204, 1219-20 (10th Cir. 2006) (affirming district court's decision that deputy chief of police and assistant city attorney caused deprivation of plaintiffs' First Amendment rights where deputy signed letter denying parade permits and attorney drafted letter denying parade permits despite knowledge that denial was likely unconstitutional); *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (reasonable jury could find that plaintiffs' arrests and prolonged detentions were proximately caused by defendants' conduct where defendants initially detained plaintiffs without reasonable suspicion, forced them to the ground, handcuffed them, and then transferred plaintiffs to custody of other officers); *Mink v. Knox*, 613 F.3d 995, 1001-02 (10th Cir. 2010) (reversing district court's 12(b)(6) dismissal of complaint against deputy district attorney where plaintiff alleged that deputy district attorney reviewed and approved the affidavit submitted to the state district court in support of warrant to search plaintiff's home; that deputy district attorney reviewed warrant; and plaintiff further alleged that deputy district attorney knew or should have known that warrant failed to meet particularity requirement of Fourth Amendment).

Taking the allegations in the first amended complaint as true, and making all reasonable inferences in plaintiffs' favor, the amended complaint does not plausibly assert the requisite causal connection between Sergeant Wingo's conduct and the search that occurred at the Hartes'

home.   The allegations concerning Sergeant Wingo's observation of Mr. Harte and his forwarding of Mr. Harte's license plate number to the Sheriff's Department, in the absence of more, do not support a reasonable inference that Sergeant Wingo's conduct set in motion a series of events that he knew or reasonably should have known would cause others to deprive plaintiffs of their constitutional rights.  *Mink*, 613 F.3d at 1002-03.  The first amended complaint against Sergeant Wingo must be dismissed and the motion is granted.

That having been said, plaintiffs in their response brief set forth numerous additional allegations concerning Sergeant Wingo's participation in the alleged constitutional violations and request permission to file a second amended complaint in the event the court concludes that the first amended complaint is factually deficient.  Plaintiffs allege, for example, that Sergeant Wingo was instrumental in persuading law enforcement agencies that shopping at hydroponics stores is an indicator of criminal activity; that he "recruited" the Johnson County Sheriff's Department to participate in Operation Constant Gardener; and that the Sheriff Department's participation in the initiative was "secured and guided by" Sergeant Wingo.  Plaintiffs further allege in their brief that Sergeant Wingo, in June 2011, conducted a 4-hour training session at the Johnson County Sheriff's Department entitled "Indoor Marijuana Grow Operations" and that at least four of the deputies directly involved in the alleged constitutional violations in this case completed Sergeant Wingo's training session.  Plaintiffs contend that discovery likely will reveal that Sergeant Wingo is the "architect" behind Operation Constant Gardner and that the deputy-defendants in this case applied for and executed the search warrant in this case using techniques learned from Sergeant Wingo.

Sergeant Wingo, in his reply, does not address plaintiffs' supplemental allegations or plaintiffs' alternative request to file an amended complaint.  The court, then, will grant the motion to dismiss plaintiffs' first amended complaint as to Sergeant Wingo but will permit plaintiffs to file a second amended complaint to incorporate the additional facts set forth in their response brief as well as any other factual allegations they might have concerning Sergeant Wingo's participation in the alleged constitutional violations.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Sergeant Jim Wingo's motion to dismiss plaintiffs' amended complaint (doc. 36) is granted and plaintiffs are permitted to file a second amended complaint no later than Monday, July 14, 2014.

**IT IS SO ORDERED.**

Dated this 30th day of June, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

9