## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Adlynn K. Harte et al.,**

    **Plaintiffs,**

**v.**              **Case No. 13-2586-JWL**

**Board of Commissioners of the
County of Johnson County, Kansas et al.,**

    **Defendants.**

### MEMORANDUM & ORDER

  Plaintiffs Adlynn K. Harte, Robert W. Harte and their minor children filed suit against defendants alleging claims under the Fourth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983 and Kansas state law arising out of a SWAT-style entry and search of the Hartes' residence in Leawood, Kansas.  This matter is presently before the court on defendant Sergeant Jim Wingo's motion to dismiss plaintiffs' second amended complaint for failure to state a claim on the grounds that plaintiffs have not alleged facts showing that Sergeant Wingo caused or contributed to the alleged constitutional violations.  As will be explained, the motion is denied.

**Background**

  Defendant Wingo's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6).  In analyzing that motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff."  *Burnett v.*

*Mortgage Elec. Registration Sys., Inc*., 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). Consistent with this standard, the following well-pleaded allegations, taken from plaintiffs' second amended complaint, are accepted as true for purposes of defendant Wingo's motion.

Based on the assumption that garden stores selling hydroponic equipment sell all the necessary components for growing marijuana and are frequented by persons who grow marijuana indoors, law enforcement agencies in Kansas and Missouri instituted a highly publicized initiative known as Operation Constant Gardener in an effort to target indoor marijuana growers. In connection with that initiative, Missouri Highway Patrol Sergeant Wingo regularly conducts surveillance of hydroponics stores in the Kansas City metropolitan area, maintains extensive spreadsheets of shoppers or "subjects," traces customers spotted at such stores through license plate numbers to home addresses, and then farms out "tips" to area law enforcement agencies. As alleged in the second amended complaint, Sergeant Wingo spearheaded the creation of Operation Constant Gardener, had trained many Johnson County deputies regarding indoor marijuana grow operations, actively recruited participating agencies (including the participation of the Johnson County Sheriff's Department), and aggressively promoted the idea that those who shopped at hydroponic gardening stores were likely involved in illegal drug activity. On August 9, 2011, Sergeant Wingo was conducting surveillance at a hydroponics store called The Green Circle. He observed Mr. Harte leaving The Green Circle

2

with his two children and carrying a small bag of merchandise.  Sergeant Wingo noted Mr. Harte's license plate number but did nothing else with the information until late March 2012.

In March 2012, the Johnson County Sheriff's Department, in connection with Operation Constant Gardener, was preparing for a press conference scheduled on April 20, 2012—a date known as an unofficial marijuana "holiday" among drug users.  The purpose of the press conference, described in the amended complaint as the Sheriff's Department's "annual publicity binge," was to tout the success of the Department's initiative by announcing that substantial quantities of marijuana had been confiscated and arrests had been made in connection with Operation Constant Gardener.  As April 20, 2012 approached, Sergeant Wingo, in late March 2012, provided Mr. Harte's license plate number to deputies with the Johnson County Sheriff's Department.  In early April 2012, deputies in the Johnson County Sheriff's Department traced Mr. Harte's license plate to his home address in Leawood, Kansas and conducted trash pulls at the Hartes' residence on April 3, April 10 and April 17, 2012.  Plaintiffs allege in the second amended complaint that all of the deputies involved in the trash pulls had been trained by Sergeant Wingo on how to identify indoor marijuana grow operations.

During the search of the Hartes' trash, officers discovered "saturated plant material" which they tested for the presence of marijuana by using a field test rather than the more reliable services of the Johnson County crime lab.  According to the results of the field test, the plant material tested "presumptive" but not "conclusive" for the presence of marijuana. The field test is not intended to be used with saturated samples and it has been shown to have a 70% false positive rate, particularly with regard to food items commonly discarded in kitchen trash.  In

fact, the "saturated plant material" discovered by deputies in the Hartes' trash consisted of loose tea leaves discarded by Mrs. Harte.

Based on the plant material found in the Hartes' trash and Sergeant Wingo's tip that Mr. Harte had purchased unidentified merchandise at a hydroponics store, the deputies apparently believed that a hydroponic indoor marijuana growing operation would be discovered at the Hartes' residence.  The deputies sought and obtained a search warrant for the Hartes' residence. Plaintiffs allege in the second amended complaint that the deputies proceeded with the search "based in part on the training provided by Wingo—recklessly foregoing reliable lab testing and the use of accepted investigative techniques."  In the early morning hours of April 20, 2012, deputies executed a SWAT-style entry and search of the Hartes' residence.  The hydroponic garden discovered at the residence, however, contained only vegetable plants and an exhaustive search of the residence failed to uncover any evidence of illegal activity.  At the press conference later that afternoon, Johnson County Sheriff Frank Denning touted the success of the raids executed in connection with Operation Constant Gardener and did not indicate that deputies came up empty-handed at any house involved in the raids.  After the raid on the Hartes' home, the deputies submitted the saturated plant material to the Johnson County Crime Lab. Tests conducted by the lab conclusively established that the plant material was not marijuana. The lab analyst also noted that the plant material did not resemble marijuana when viewed through a microscope or with the naked eye.

**Discussion**

In their second amended complaint, plaintiffs assert only one claim against Sergeant Wingo—a claim under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments for "conducting a search of plaintiffs' home in the absence of probable cause, by relying on a warrant that was facially deficient or which relied on materially false or misleading statements." Section 1983, in pertinent part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or *causes* to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). "The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010) (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)). Direct participation in the constitutional violations, then, is not necessary. *Id*.

Sergeant Wingo moves to dismiss the claim against him on the grounds that plaintiffs have not alleged facts showing that Sergeant Wingo caused the alleged constitutional violations. While Sergeant Wingo concedes that the allegations in the second amended complaint are sufficient to establish that he caused or contributed an investigation of plaintiffs, he contends that he cannot be held liable for the violations alleged in the complaint because those violations stem from the way in which the Johnson County deputies mishandled that investigation. Sergeant Wingo highlights that he was undisputedly not involved in the shoddy investigation;

that he did not advise the deputies to forego lab testing and rely solely on a field test; and that he did not advise the deputies to forego traditional investigative techniques.  According to Sergeant Wingo, then, the deputies' investigation constitutes an unforeseeable intervening event sufficient to supersede Sergeant Wingo's liability.  *See Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (defendants may be liable for constitutional violations if the violations would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability).

While Sergeant Wingo insists that he did not advise the deputies to conduct the investigation in the manner in which it was apparently conducted, the court is required at this stage to accept as true plaintiffs' well-pleaded allegations.  Plaintiffs have specifically alleged that all of the deputies involved in the trash pulls had been trained by Sergeant Wingo on how to identify indoor marijuana grow operations and that the deputies proceeded with the search of the Hartes' residence "based in part on the training provided by Wingo—recklessly foregoing reliable lab testing and the use of accepted investigative techniques."[1]  Plaintiffs further allege that Sergeant Wingo provided the tip about Mr. Harte just four weeks prior to the scheduled April 20, 2012 raids and that, accordingly, he likely understood—as the architect of the

---

[1] Sergeant Wingo contends that he cannot be held responsible for training the Johnson County deputies because Sheriff Denning, as the final policymaker for the department, is solely responsible for providing and enforcing proper training and for correcting any misinformation that Sergeant Wingo might have provided to the deputies.  This argument lacks merit, as the allegations in the second amended complaint permit the reasonable inference that Sheriff Denning delegated to Sergeant Wingo the authority to train the department's deputies on Operation Constant Gardener.  *Wulf v. City of Wichita*, 883 F.2d 842, 864 (10th Cir. 1989) (even though City Manager had final policymaking authority, Chief of Police could be held personally liable for termination of officer's employment where City Manager delegated to Chief of Police some authority to make employment decisions).

operation—that officers utilizing the "tip" would not have sufficient time or resources to conduct a traditional investigation using accepted investigative techniques and that investigative "shortcuts" would likely be necessary.  Taken together, these allegations (and the reasonable inferences drawn therefrom) are sufficient to plausibly suggest that Sergeant Wingo was intimately familiar with the investigative methods utilized in Operation Constant Gardener and, through his conduct, set in motion a series of events that he knew or should have known would lead to the alleged constitutional violations.  *Wilson v. Montano*, 715 F.3d 847, 857-58 (10th Cir. 2013) (district court did not err in denying motion to dismiss complaint as to warden, where allegations, taken as true, established that warden had inappropriately trained employees, which led to violation of rights); *Martinez v. Carson*, 697 F.3d 1252, 1255-56 (10th Cir. 2012) (reversing grant of summary judgment where reasonable jury could conclude that defendants' conduct was proximate cause of at least some portion of constitutional violations; disputed facts existed regarding what was reasonably foreseeable to officers); *Buck v. City of Albuquerque*, 549 F.2d 1269, 1279-80 (10th Cir. 2008) (anti-war protestors established causal connection between violation of rights and police captain's conduct where evidence, viewed in the light most favorable to plaintiffs, demonstrated that captain played a significant role in developing department's response to protest and his conduct served as the "catalyst" of the chain of events leading to arrests).

For the foregoing reasons, the allegations in plaintiffs' second amended complaint are sufficient to raise plaintiffs' claim against Sergeant Wingo above the speculative level and into the realm of plausible liability.  Sergeant Wingo's motion to dismiss the second amended complaint is denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Sergeant Jim Wingo's motion to dismiss plaintiffs' second amended complaint (doc. 64) is denied.

**IT IS SO ORDERED.**

Dated this 9th day of October, 2014, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge