## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Adlynn K. Harte et al.,

       **Plaintiffs,**

v.                                         **Case No. 13-2586-JWL**

Board of Commissioners of the
County of Johnson County, Kansas et al.,

       **Defendants.**

### MEMORANDUM & ORDER

In December 2015, this court granted summary judgment in favor of defendants on plaintiffs' claims. In July 2017, the Tenth Circuit affirmed in part and reversed in part this court's judgment. After the Circuit issued its mandate remanding the case to this court for further proceedings, the court set the case for jury trial beginning December 4, 2017. Defendants then filed a motion to stay the case pending the filing and resolution of a petition for writ of certiorari to the United States Supreme Court.

On October 19, 2017, the court issued a Memorandum and Order (doc. 375) in which it denied defendants' motion to stay the case; described the specific claims it believed remained for trial in light of the Circuit's opinion; and requested additional briefing regarding the effect of the Circuit's opinion on certain issues raised by defendants in their summary judgment motion that the court had not previously addressed. The parties have now filed those supplemental briefs and, in addition, have filed motions to reconsider certain portions of the court's Memorandum and Order. Plaintiffs seek reconsideration of the court's conclusion that no §

1983 claims or theories relating to the unreasonable execution of the search warrant remain for trial. Defendants seek reconsideration of the court's conclusion that the Circuit's opinion forecloses the court from reinstating its summary judgment rulings as to the remaining state law claims if the jury finds that no *Franks* violation occurred. As will be explained, the court denies both motions to reconsider; denies summary judgment as to the remaining state law claims; concludes that only defendants Reddin, Burns and Blake will proceed to trial on plaintiffs' § 1983 claim; and concludes that all defendants, including the Board, will proceed to trial on the state law claims.

The court begins with plaintiffs' motion to reconsider. In its October 19, 2017 Memorandum and Order, the court concluded that only one § 1983 claim remains for trial after the Circuit's opinion, a claim based on the limited theory that one or more of the remaining defendants lied about the results of the field tests conducted in April 2012 such that the warrant was invalid and the resulting search and seizure was therefore unconstitutional (hereinafter, the "*Franks*" claim). In their motion to reconsider, plaintiffs contend that the court misconstrued the Circuit's opinion and that two additional search-and-seizure theories remain in the case— that the deputies acted as if they possessed a "general warrant" to search for any and all criminal activity (hereinafter, the "general warrant" theory); and that the defendants detained plaintiffs for too long (hereinafter, the "prolonged detention" theory). The court disagrees.

Defendants moved for summary judgment on Count II of the pretrial order. Count II of the pretrial order reads as follows: "Violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments for unreasonable execution of the search warrant and by continuing the detention and arrest of Plaintiffs and the search of their home after it was clear that probable

cause had vanished." Count II also refers back to plaintiffs' second amended complaint. Notably, Count II of the second amended complaint relates only to the dissipation of probable cause. That count is captioned as a claim for "Unreasonable Execution of Search Warrant by Continuing the Detention or Arrest of Plaintiffs and the Search of their Home After it was Clear that any Claim to Probable Cause Had Vanished." The second amended complaint contains no theory based on "prolonged detention" aside from the dissipation theory and no "general warrant" theory. In their motion for summary judgment, then, defendants reasonably construed Count II as limited to a dissipation theory. In their response to the motion, plaintiffs did not challenge defendants' construction of Count II. Nowhere in plaintiffs' summary judgment submissions did they articulate a theory of "prolonged detention" apart from the dissipation of probable cause. Plaintiffs' summary judgment arguments regarding the prolonged detention were clearly tied only to the "erosion" or "withering away" of probable cause. See doc. 324, pp. 66-68. Tellingly, in their motion to reconsider, plaintiffs identify one page in their summary judgment response where they allegedly raised the "prolonged detention" theory. That page, page 96 of plaintiffs' summary judgment response, relates solely to the state law claim for false arrest rather than the § 1983 search-and-seizure claim. And the single sentence plaintiffs highlight was not an "argument" about the facts of this case, but a quotation from a Tenth Circuit case. Suffice it to say, the court is satisfied that the "prolonged detention" theory was not asserted in plaintiffs' summary judgment response and has never been asserted in this case.

Moreover, the Circuit never recognized or addressed a separate "prolonged detention" theory. In fact, the court is not convinced that the Circuit was even aware that plaintiffs were pressing that theory. Plaintiffs argue in their motion to reconsider that Judge Phillips expressly

3

recognized a distinct theory of liability based on the "unreasonable detention" of plaintiffs, but the court's reading of Judge Phillips' opinion reveals no acknowledgement that plaintiffs intended to assert a separate "prolonged detention" theory in this case. Judge Phillips discussed the prolonged detention of plaintiffs in the opening paragraph of section II.B.1 of his opinion, but that discussion tied the prolonged detention of plaintiffs to the dissipation of probable cause. And while Judge Lucero referenced a triable issue of fact as to whether the officers unnecessarily prolonged the detention of the children, that statement was limited to the context of plaintiffs' unreasonable force claim. Judge Moritz never acknowledged the existence of a "prolonged detention" theory apart from the dissipation of probable cause.

Despite the fact that the Circuit never recognized or discussed a separate "prolonged detention" theory of liability, plaintiffs assert that the Circuit's "broad reversal" of the search-and-seizure claims (in the panel's opening summary of the disposition of the claims) controls and requires the "reversal" of this court's opinion as to all search-and-seizure theories. Even if the court were to accept that principle, it would not apply to the prolonged detention theory. Because that theory was not asserted in the pretrial order (or, by reference, in the second amended complaint) or in connection with the summary judgment motion, there is no ruling on that theory for the Circuit to have reversed. Any theory of liability that the deputies, irrespective of the dissipation of probable cause, prolonged the detention of plaintiffs is simply not a theory in this case.

Plaintiffs' general warrant theory requires a slightly different analysis. Unlike their prolonged detention theory, plaintiffs did raise a general warrant theory in their summary judgment response, albeit briefly. See doc. 324, p. 70-71. The court granted summary judgment

on the merits of this theory on the grounds that no evidence existed that any deputy conducted a general exploratory search of the residence or searched for criminal conduct unrelated to marijuana.  See doc. 340 at 29 n.11.  Plaintiffs assert that this theory was preserved and asserted on appeal.  Nonetheless, Judge Moritz is the only panel member who mentioned a general warrant theory and she did so only in the context of explaining her belief that plaintiffs had abandoned their dissipation theory.  So while Judge Moritz perhaps recognized a general warrant theory, she never expressed an opinion on the viability of that theory or addressed this court's treatment of it.  In fact, she expressly declined to address whether the deputies properly executed the search in light of her holding that the warrant was invalid under *Franks*.  Here, plaintiffs again assert that the Circuit's "broad reversal" of the search-and-seizure claims controls and requires the "reversal" of this court's opinion as to the general warrant theory.

The court rejects this argument.  Plaintiffs direct the court to no authority—and the court has uncovered none—suggesting that the Circuit's opening summary of the disposition of the claims controls over the specific opinions authored by the panel judges.[1]  In fact, that opening summary expressly remanded the claims "for further proceedings not inconsistent with these opinions."[2]  If the court were to conclude that plaintiffs' general warrant theory survived the

---

[1] Of course, if the court construed the Circuit's per curiam reversal of the grant of summary judgment on the unlawful search and seizure claims as broadly as plaintiffs suggest, then the court would, as a matter of logic, be compelled to believe that the Circuit also meant to reverse this court's ruling on the dissipation theory, which it clearly did not.  Thus, the Circuit could not have intended to reverse every aspect of plaintiffs' search-and-seizure claims.

[2] Plaintiffs rely on *King v. Champion*, 55 F.3d 522, 526 (10th Cir. 1995) for the principle that the Circuit was not required to provide its reasoning in connection with reversing the court's grant of summary judgment on the general warrant theory.  The Circuit in *King* was faced with a summary opinion issued by a state court of appeals.  Rejecting a habeas petitioner's argument that the summary opinion denied him the opportunity to explore the court's "thought processes,"

Circuit's opinion and permitted that claim to proceed to trial, then the court would be conducting proceedings inconsistent with the Circuit's opinions. In that regard, there is no panel judge who reversed the court's grant of summary judgment on the general warrant theory. And despite plaintiffs' insistence that Judge Moritz recognized the theory, she asserted in her opinion that she would "only reverse summary judgment as to the Hartes' . . . *Franks* claim (and the unlawful search and seizure that directly resulted therefrom." It is beyond dispute, then, that Judge Moritz did not reverse—expressly or by implication—the court's grant of summary judgment on the general warrant theory. Because no judge reversed summary judgment on the general warrant theory, the court's grant of summary judgment on that theory is undisturbed. Plaintiffs cannot proceed to trial on this theory. *See Young v. Kemp*, 760 F.2d 1097, 1103 (11th Cir. 1985) (where Circuit fails to reach an issue on appeal despite the fact that the issue is argued, the district court's holding is undisturbed and the effect of leaving the district court's holding undisturbed is "the same as if there had been no appeal at all"). Plaintiffs' motion to reconsider is denied in its entirety.

Defendants' motion to reconsider is also denied. In their motion to stay, defendants had argued that this court could simply re-enter summary judgment on the state law claims if the jury finds no *Franks* violation. This court, in its October 19, 2017 Memorandum and Order, rejected that argument and concluded that the state law claims would proceed to trial regardless of the jury's determination on the *Franks* claim because the state law claims were not dependent

the Circuit in *King* explained that courts of appeal have wide latitude in their decisions as to "whether or how" to write opinions and are not necessarily required to provide a written opinion accompanying a decision. Because each of the panel judges authored a detailed opinion in this case, *King* is not persuasive in this context.

on a *Franks* violation. In so concluding, the court stated that the Circuit's opinion "foreclosed" the re-entry of summary judgment on the state law claims in light of factual issues identified by Judges Lucero and Phillips (in connection with plaintiffs' § 1983 claims) regarding the deputies' use of unreasonable force and the deputies' continued search of the home and detention of plaintiffs after the dissipation of probable cause. To clarify, the court did not mean to suggest that the Circuit in fact reversed the grant of summary judgment on the state law claims based on those factual issues. It clearly did not. Nor did the court mean to suggest that it was precluded by the mandate from re-entering summary judgment on the state law claims in the event the jury finds no *Franks* violation. The court's reference to the factual issues identified by Judges Lucero and Phillips was intended to demonstrate that a reasonable jury could conclude—as did two Circuit judges—that the deputies utilized unreasonable force in connection with their entrance into the residence and the manner in which they detained plaintiffs. While Judges Lucero and Phillips discussed those factual issues only in connection with plaintiffs' § 1983 claim, those facts would be pertinent to a jury's resolution of plaintiffs' claims for assault and intentional infliction of emotional distress. Similarly, the factual issues identified by Judges Lucero and Phillips with respect to the dissipation of probable cause as to plaintiffs' § 1983 claim are the same factual issues which would permit a reasonable jury to conclude that the deputies unnecessarily prolonged the search of the home and the detention of plaintiffs after the dissipation of probable cause—facts that are pertinent to the resolution of plaintiffs' claims for trespass and false arrest. This aspect of the court's October 19, 2017 Memorandum and Order, then, was intended to relay only that the court will not re-enter summary judgment on the state law claims if the jury finds no *Franks* violation because a reasonable jury, even in the absence of

7

a *Franks* violation, could find in favor of plaintiffs on the state law claims. Thus, because

defendants' motion to reconsider is based on a misunderstanding of the court's ruling, it is

denied.

Having denied the parties' motions to reconsider, the court turns to the parties'

supplemental briefs and, more specifically, the remaining alternative summary judgment

arguments that it did not address in its December 2015 Memorandum and Order.


*Whether the Warrant Affidavit Supports a Finding of Probable Cause in the Absence of the Alleged False Statements*


In their motion for summary judgment, defendants assert that the warrant affidavit

supports a finding of "arguable" probable cause even in the absence of the alleged false

statements concerning the positive field test results. In support of this argument, defendants

highlight the "probative value" of shopping at the Green Circle and the deputies' visual

inspection of the plant material from plaintiffs' trash. Relying solely on the Circuit's opinion in

*Stonecipher v. Valles*, 759 F.3d 1134 (10th Cir. 2014), defendants contend that this evidence

"easily forms a sufficient basis for arguable probable cause." But the doctrine of "arguable

probable cause" applies only in the context of qualified immunity and only in assessing whether

an officer should be excused for making "reasonable mistakes" of law or fact. *See id*. at 1142.

As explained in *Stonecipher*, when the evidence demonstrates that an officer had an "objectively

reasonable, even if mistaken belief" that probable cause exists, then the officer is entitled to

qualified immunity. *Id*. at 1141. In light of the Circuit's opinion that factual issues exist

concerning whether the deputies lied about obtaining positive field test results, the court cannot conclude that the deputies made a "reasonable mistake" about the existence of probable cause.

In a related vein, defendants contend that *Franks v. Delaware* requires an analysis as to whether probable cause still exists with the alleged false information excised and they contend that the Circuit failed to analyze that aspect of *Franks*. The court agrees with plaintiffs that the Circuit's opinion indicates that both Judge Lucero and Judge Moritz implicitly determined that the affidavit would not support a finding of probable cause in the absence of the alleged false statements. As plaintiffs highlight, both judges expressly and accurately stated that *Franks* requires, in addition to a deliberate falsehood, a showing that the false statements were necessary to a finding of probable cause. *See* Opinion at 1162, 1199. The fact that the Circuit reversed the court's summary judgment ruling on the invalid warrant claim after accurately stating the law clearly demonstrates the Circuit considered and rejected defendants' argument that the allegedly false statements did not undermine the existence of probable cause. Because the Circuit implicitly decided this issue, it is not an issue that this court may re-examine on remand.

*Kansas Tort Claims Act*

Defendants initially moved for summary judgment on the remaining state law claims on the grounds that the deputies' search of plaintiffs' residence and their decision to continue the search after finding only tomato plants are discretionary acts that are immunized under the discretionary function exemption of the Kansas Tort Claims Act. *See* K.S.A. § 75-6104(e). In light of the Circuit's opinion finding factual disputes as to the existence of probable cause,

defendants have narrowed this argument somewhat. They now contend that the deputies who are not implicated in the *Franks* claim are entitled to immunity based on the manner in which they executed the warrant.

Viewing the evidence in the light most favorable to plaintiffs, defendants are not entitled to discretionary function immunity. The immunity protects government entities and their employees when they undertake decisionmaking requiring the exercise of discretion, even if that discretion may be abused in the process. *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 291 (2011) (citing K.S.A. § 75–6104(e)). The protection is not confined to decisions made at an executive level or made by elected officials and may encompass some choices made by nonsupervisory personnel. *Id.* The discretionary function exception to liability "primarily involves policy-oriented decisions and decisions of such a nature that the legislature intended them to be beyond judicial review." *Williams v. C-U-Out Bail Bonds, LLC*, 402 P.3d 558, 568 (Kan. App. 2017).

Discretionary function immunity, however, does not protect law enforcement personnel from liability for the use of unreasonable force. *See Caplinger v. Carter*, 9 Kan. App. 2d 287, 295 (1984). In this case, plaintiffs' state law claims for assault and intentional infliction of emotional distress are based on the deputies' purported use of unreasonable force during the execution of the warrant. Viewed in the light most favorable to plaintiffs, the evidence is sufficient to permit a jury to conclude that the deputies used unreasonable force in executing the warrant. Defendants, then, have not established that they are entitled to discretionary function immunity with respect to these claims.

Neither have the defendants established that they are entitled to discretionary function immunity with respect to the trespass and false arrest claims. These claims are based on the deputies' decision to remain in plaintiffs' home and continue to search the home and detain plaintiffs after the purported dissipation of probable cause. There are sufficient facts in the record from which a jury could infer that probable cause dissipated early in the search and that the deputies exceeded the scope of the warrant by continuing to search the home and detain plaintiffs. Defendants have not shown that the deputies' decision to continue the search and detention was "policy-oriented" or that it was the type of decision that the legislature intended to be beyond judicial review. *See Williams*, 402 P.3d at 569 (the more a judgment involves the making of policy the more it is recognized as inappropriate for judicial review). Indeed, defendants direct the court to no Kansas cases applying discretionary function immunity to law enforcement officers alleged to have unreasonably exceeded the scope of a search warrant. They have not established that they are entitled to discretionary function immunity with respect to plaintiffs' state law claims. *See Estate of Belden*, 46 Kan. App. 2d at 292-93 (discretionary function requires decision-making in selecting among myriad "reasonable methods" or "legitimate options"); *Franz v. Little*, 791 F. Supp. 827, 834 (D. Kan. 1992) (police officers were not entitled to discretionary immunity on pendent trespass claim where plaintiffs alleged that officer violated Fourth Amendment in conducting search; officers were not left to their own "unbridled discretion" in conducting searches but were bound by the Constitution).

*Quasi-Judicial Immunity*

11

Previously, defendants moved for summary judgment on plaintiffs' trespass claim on the grounds that the deputies were entitled to quasi-judicial immunity because they were executing a facially valid warrant. According to defendants, an officer who enters a residence pursuant to a facially valid search warrant cannot be held liable for trespass. As plaintiffs highlight in their response to the motion for summary judgment, defendants direct the court to no Kansas cases adopting the doctrine of quasi-judicial immunity in this context. But even assuming that Kansas recognizes the doctrine, defendants likely cannot dispute that law enforcement officials who exceed the scope of their warrant would not be entitled to quasi-judicial immunity. Because factual disputes exist as to whether the deputies exceeded the scope of the warrant by remaining in plaintiffs' home and continuing to search the home after the dissipation of probable cause, the search warrant does not automatically bar plaintiffs' trespass claim. Defendants, then, have not established that they are entitled to quasi-judicial immunity and this claim must proceed to trial.

*Assault*

In their motion for summary judgment, defendants contend that summary judgment on the assault claim is appropriate because there is no evidence from which a jury could conclude that the defendants intended to harm plaintiffs. As Judge Phillips noted in his opinion, under Kansas law, assault "is an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm." *Baska v. Scherzer*, 283 Kan. 750, 756 (2007) (quoting PIK 3d 127.01). Judge Phillips would have affirmed summary judgment on plaintiffs' assault claim on the grounds that plaintiffs could not show "that the deputies intended to threaten them or attempted to injure them" but showed only

12

that the deputies intended to take control of the situation and conduct their search. Because no other judge joined Judge Phillips' opinion on this issue, the court is not precluded from deciding the issue at this juncture. The court believes that a jury could conclude that plaintiffs, particularly upon the deputies' initial, forceful entry into the home, experienced an immediate apprehension of bodily harm. A jury can also infer that plaintiffs' apprehension was substantially certain to result from the deputies' intentional acts in entering the home. That inference is sufficient to establish the requisite intent. Summary judgment on this basis, then, is denied. *See Thomas v. Benchmark Ins. Co.*, 285 Kan. 918, 923 (2008) (intent to cause injury may be inferred from "substantially certain" consequences of intentional acts) (citing Restatement (Second) of Torts § 8A) (discussing intentional act exclusions of liability policy).

*Remaining Defendants*

Having identified which specific claims remain for trial after the parties' supplemental briefs and motions to reconsider, the court turns to resolve which defendants will stand trial on those specific claims. With respect to plaintiffs' *Franks* claim, defendants assert that defendants Reddin, Burns and Blake (the defendants who allegedly lied about the positive test results and the only defendants who were involved in obtaining the warrant) are the only proper defendants and that summary judgment must be granted in favor of the remaining defendants. According to defendants, only defendants Reddin, Burns and Blake could reasonably be expected to know that the warrant was defective and there is no evidence in the record that any of the remaining defendants who executed the warrant had any reason to suspect that the warrant was defective. In their supplemental brief, plaintiffs contend that all of the individual defendants are liable to

13

them on the *Franks* claim because none of these deputies bothered to read the warrant and the deputies "blindly accepted" the validity of the defective warrant. Plaintiffs further contend that if the jury concludes that the warrant was invalid in light of the deputies' deliberate falsehood, then each deputy who executed the search will have participated in an unconstitutional search.

The court believes that the individual defendants who participated in the execution of the search but who had no involvement in obtaining the warrant are entitled to qualified immunity. In so holding, the court looks to Tenth Circuit case law. In *Salmon v. Schwarz*, 948 F.2d 1131 (10th Cir. 1991), the Tenth Circuit granted qualified immunity to defendant FBI agent Martin Schwartz, who executed a facially valid arrest warrant, even though the Tenth Circuit denied qualified immunity to defendant Arturo Gonzalez, the agent who obtained the arrest warrant through material omissions. *See id*. at 1136-37. The Tenth Circuit noted that Schwarz did not participate in the application for the arrest and search warrants and that he bore "no liability for any lack of adequate probable cause to apply for the arrest warrant." *Id*. at 1136-37. The Circuit further held that because Schwarz had no role in preparing the affidavit, and because the warrant issued was facially valid, Schwarz's execution of the arrest warrant was protected by the doctrine of qualified immunity. *Id*. at 1140. *Salmon*, then, instructs that the deputies in this case who executed the warrant but had no participation in obtaining the warrant cannot be held liable under § 1983 for obtaining the invalid warrant or for executing that warrant.

There is no evidence in the record suggesting that deputies who were not involved in procuring the warrant but were executing the warrant would have doubted that the warrant was proper or that it provided the authority needed to conduct the search. While plaintiffs make much of the fact that none of the deputies read the warrant prior to executing it, they do not

14

suggest that a reading of the warrant would have revealed any defect. As the Circuit's opinion makes clear, the only arguable defect in this case was not in the warrant itself but the underlying warrant affidavit in which the investigating deputies allegedly lied about obtaining false positive test results. Plaintiffs do not suggest that the deputies executing the warrant were required to read the warrant *affidavit* and they do not suggest that a reading of the warrant itself would have revealed any defect. Thus, the fact that none of the deputies read the warrant does not, by itself, render them liable for the unlawful search. *See Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir. 1984) ("Unless a warrant is facially invalid an officer has no constitutional duty to independently determine its validity."); *see also Wigley v. City of Albuquerque,* 567 Fed. Appx. 606, 609-10 (10th Cir. June 4, 2014) (there is no law establishing that deputies assisting in execution of warrant have a duty to read the warrant or the affidavit and assess whether action was justified; law does not require police officers to second-guess a judicial determination that probable cause supports a search warrant). In sum, because the deputies who executed the search but were not responsible for procuring the search warrant were entitled to rely on the fact that a search warrant had issued, they cannot be held liable for executing the search. *See Stonecipher v. Valles*, 759 F.3d 1134, 1142 & n.3 (10th Cir. 2014) (defendants who executed search could not be held liable for unlawful search and seizure without probable cause because they were entitled to rely on warrant; the only defendant who could be held liable was the one responsible for procuring the warrant). Summary judgment is granted in favor of defendants Denning, Pfannenstiel, Cossairt, Shoop, Smith, Farkes, Kilbey and Vrabac on plaintiffs' remaining § 1983 claim.

In the pretrial order, plaintiffs asserted their state law claims against all of the individual defendants (except Jim Wingo, who is no longer a defendant in the case) and the Board of County Commissioners. While the defendants initially moved for summary judgment on behalf of the individual deputies, defendants did not separately raise the issue of whether the Board was a proper defendant on the state law claims or otherwise move for summary judgment on behalf of the Board. In their supplemental brief, defendants now assert that the Board is no longer a party to this action at all because the Circuit dismissed plaintiffs' *Monell* claim—the only claim, according to defendants, that plaintiffs asserted against the Board. This assertion is disingenuous. The pretrial order clearly asserts the state law claims against "all defendants except Defendant Wingo" and defendants acknowledged as much in their initial motion for summary judgment when, on the last page of their brief and without any explanation, defendants asserted that the Board was entitled to summary judgment on the state law claims.

Defendants further contend in their supplemental brief that Kansas law precludes liability for the Board based on activities that are within the sole discretion of the Sheriff, a separately elected official with independent statutory duties. This is an argument that was raised for the first time in defendants' reply to plaintiffs' response to the motion for summary judgment. The court, then, declines to address the issue at this late stage. *See Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief). For now, the Board remains a defendant as to the state law claims.[3]

---

[3] The Board may raise this issue in connection with a Rule 50 motion at the close of plaintiffs' case and the court anticipates that the parties will submit briefing on the issue, with citation to pertinent authorities, at that juncture.

16

Defendants did raise in their initial motion for summary judgment the argument that defendants Reddin, Denning, Burns and Pfannenstiel cannot be liable on plaintiffs' state law claims because they were not present during the execution of the warrant and no claims of respondeat superior were made against them. In their supplemental brief, plaintiffs make two arguments—first, that defendants Reddin, Denning, Burns and Pfannenstiel are directly liable to plaintiffs on the state law claims because they ordered the actions and conduct that gave rise to the state law claims; and second, that the pretrial order was broad enough to encompass a respondeat superior theory of liability and defendants failed to establish in their motion for summary judgment the insufficiency of plaintiffs' evidence on that theory.

In the pretrial order, plaintiffs plainly asserted their state law claims against all individual defendants (except Jim Wingo) and, in doing so, incorporated by reference the specific counts set forth in their Second Amended Complaint. The Second Amended Complaint, in turn, asserts for each state law claim that the "Defendants' actions directly caused Plaintiffs to suffer grievous and continuing injuries." By contrast, the Second Amended Complaint asserts that the Board is "liable for the harm to Plaintiffs under the doctrine of respondeat superior." A fair reading of the pretrial order, coupled with the Second Amended Complaint that is expressly incorporated by reference, was sufficient to put defendants on notice that plaintiffs were asserting a theory of direct liability against all deputies, including those who were not present at the search. But defendants never moved for summary judgment on that theory, aside from asserting in a footnote that certain defendants were not present during the search and that no claim of vicarious liability had been asserted. Neither the record nor the briefing is sufficiently developed for the court to resolve at this juncture whether plaintiffs' direct liability theory has

17

merit.  But the record is clear that plaintiffs never asserted a theory of vicarious liability against the defendants who were not present at the search.  That theory, then, is not available to plaintiffs at trial.  But defendants Reddin, Denning, Burns and Pfannenstiel must proceed to trial on the state law claims on plaintiffs' direct liability theory.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for reconsideration (doc. 376) is **denied** and plaintiffs' motion for reconsideration (doc. 378) is **denied.**

**IT IS FURTHER ORDERED BY THE COURT THAT** summary judgment in favor of defendants Denning, Pfannenstiel, Cossairt, Shoop, Smith, Farkes, Kilbey and Vrabac on plaintiffs' remaining § 1983 claim is **granted**.  The remainder of defendants' summary judgment motion is **denied**.

**IT IS SO ORDERED.**

Dated this 3rd day of November, 2017, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge