**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**Adlynn K. Harte; Robert W. Harte;**
**J.H., a minor, by and through his parents**
**and next friends, Adlynn K. Harte**
**and Robert W. Harte; L.H., a minor,**
**by and through her parents and next friends,**
**Adlynn K. Harte and Robert W. Harte,**

           **Plaintiffs,**

v.                                                                                                          Case No. 13-2586-JWL

**Mark Burns; Edward Blake;**
**Michael Pfannenstiel; Larry Shoop;**
**Lucky Smith; Christopher Farkes;**
**Thomas Reddin; Tyson Kilbey; and**
**Laura Vrabac,**

           **Defendants.**

## SUPPLEMENTAL PRETRIAL ORDER

In October 2019, the Tenth Circuit remanded for further proceedings the following federal search and seizure claims: (1) whether defendants properly executed the warrant; (2) whether defendants exceeded the scope of the warrant by searching for evidence of general criminal activity; and (3) whether defendants prolonged Plaintiffs' detention, thus subjecting them to an illegal arrest. *Harte v. Bd. Of Comm'rs of the Cty. of Johnson, Kansas*, 940 F.3d 498 (10th Cir. 2019) (*Harte II*). Thereafter, the court set this case for jury trial beginning Monday, March 30, 2020 and, in preparation for that trial and to assist the court in determining what specific issues the jury will be asked to decide, requested that the parties file certain submissions

1

and responses on certain topics identified by the court. The parties filed their submissions and plaintiffs also filed a motion to compel defendants to participate in mediation.

The court then held a telephone status conference on January 24, 2020. During that conference, the court confirmed with the parties that the three discrete claims identified by the Circuit in *Harte II* would be tried to a jury. After discussions with the parties, the court also directed the parties to file additional submissions and responses. Specifically, the court ordered defendants to respond to plaintiffs' motion to compel mediation and ordered plaintiffs to file a brief addressing whether the Board of Commissioners, former Sheriff Denning, Mark Burns, and James Cossairt are proper defendants in the case at this juncture. The court also ordered plaintiffs to explain why they disagree that the jury should be advised that an investigation was conducted that resulted in the issuance of a valid search warrant; that the warrant authorized the deputies to search for marijuana in any form, including personal use and paraphernalia; and that the deputies' authority to search for those items did not dissipate at any point during the duration of the search. Defendants have filed a response to plaintiffs' submission. In the meantime, the court issued a trial order establishing certain deadlines for trial. Consistent with that order, the parties have now filed their witness lists, including the subject matter of expected testimony and a brief synopsis of the facts to which each witness is expected to testify.

After reviewing the parties' submissions and responses, including the parties' witness lists, the court hereby enters this supplemental pretrial order clarifying the proper parties in the case at this juncture and clarifying the issues that remain for trial.[1]

---

[1] The caption of the case now reflects that the Board of Commissioners, James Cossairt and former Sheriff Denning are no longer parties in the case. It also appears to the court that Jack

**Claims Remaining for Trial**

As noted earlier, three federal search and seizure claims remain for trial. The first claim is that defendants improperly or unreasonably executed the search warrant. As explained by plaintiffs in their submissions, plaintiffs intend to prove this claim with evidence that defendants decided to execute the warrant while the children were home; failed to replace firearms that had been removed from a gun safe; and unreasonably accused plaintiff Jack Harte of using marijuana after the search revealed no evidence of marijuana in the home. *See* Doc. 504, p. 12-14. The second claim is that defendants conducted an unauthorized exploratory search for evidence of criminal activity beyond what was specifically authorized in the search warrant. Plaintiffs assert that evidence of the media frenzy surrounding Operation Constant Gardener motivated defendants to search for any evidence of criminal activity in the hopes that they could show the fruits of their search at a scheduled press conference touting the success of Operation Constant Gardener. *See id*. p. 4-5. Based on plaintiffs' witness list, it appears that plaintiffs may also seek to introduce evidence of the initial investigation to show that defendants Burns and Blake knew that the search was unlikely to turn up evidence of marijuana such that those defendants instructed defendants to find any evidence of criminal activity.[2] The third claim is that defendants subjected plaintiffs to prolonged detentions. Plaintiffs submit two theories in support of this claim—that if defendants in fact were searching for evidence of any criminal

---

Harte is no longer a minor and that the caption can be amended to reflect that change in his status. If any party objects to that change, they should notify the court by February 25, 2020. Otherwise, the court will amend the caption accordingly.

[2] Any questions as to the relevance of that evidence with respect to this claim will be resolved in connection with any limine motion on that issue.

activity beyond what was authorized in the warrant,[3] then any detention during that unauthorized search was unreasonable; and that even if defendants were conducting a proper search at all times, "special circumstances" made the otherwise lawful detention of plaintiffs unreasonable. *See id.* p. 9-11.

After reviewing the parties' submissions, the court now narrows the scope of plaintiffs Adlynn and Robert Harte's prolonged detention claims to the extent those claims are based on the "special circumstances" theory. In their submissions, Adlynn and Robert Harte identify two "special" circumstances to support their theory that an otherwise lawful detention was unreasonable: (1) that there was no reason to detain plaintiffs at all after the initial detention because it quickly became clear, particularly in light of "just how little justification there was for the raid to begin with," *see* Doc. 510, that plaintiffs were not flight risks, posed no safety threat and were not "dug-dealing felons"; and (2) the nature of the detention was humiliating in that plaintiffs were held under armed guard near a large front-facing window in plain view of plaintiffs' neighbors.

The first circumstance identified by plaintiffs Adlynn and Robert Harte is foreclosed by the Supreme Court's decision in *Muehler v. Mena*, 544 U.S. 93 (2005), wherein the Court held that an officer's authority to detain incident to a lawful search is "categorical" and did not

---

[3] In their submissions to the court, *see* Doc. 504, p. 6, plaintiffs suggest that they can prevail on this claim if the jury finds that plaintiffs were detained after defendants realized that the Harte family was not "growing marijuana." This theory is clearly foreclosed by the prior jury verdict in this case and the Circuit's opinion in *Harte II*. *Harte II*, 940 F.3d 498, 524-25 (10th Cir. 2019) (jury reasonably concluded that probable cause to search existed even after defendants realized that no active grow operation existed because evidence viewed in light most favorable to defendants showed that they properly continued to search for evidence of past grow operation until the end of the search).

4

depend on the "quantum of proof justifying detention." In *Muehler*, the Supreme Court reversed the Ninth Circuit's decision that officers should have released a female resident who was present at the home during the execution of a lawful warrant as soon as it became clear that she posed no immediate threat. *Id*. at 98. The Tenth Circuit has similarly recognized that whether a detention in fact facilitates one of the governmental interests acknowledged in *Summers*—preventing flight, minimizing risk or completing the search in an orderly manner—is irrelevant. *United States v. Johnson*, 414 Fed. Appx. 176, 179 (10th Cir. 2011). Thus, the first "special circumstance" advanced by plaintiffs Adlynn and Robert Harte is no different than the arguments made and rejected in *Muehler*. As a matter of law, it is not the type of "special circumstance" or "unusual case" mentioned by the Court in *Summers*. *See also Bailey v. United States*, 586 U.S. 186, 193 (2013) (*Summers* "does not require law enforcement to have particular suspicion that an individual is involved in criminal activity or poses a specific danger to the officers.").

The second "special circumstance" identified by plaintiffs goes to the manner of the detention, not the length of it. There is no separate claim in this case that the manner in which the detention was carried out was unnecessarily degrading. Nonetheless, if plaintiffs can show that the specific manner of the detention is relevant to the inquiry of whether plaintiffs' continued detention was unreasonable, then this specific theory would not be foreclosed. *See Harman v. Pollock*, 446 F.3d 1069, 1082 n.1 (10th Cir. 2006). In other words, if holding plaintiffs under armed guard near a large front-facing window in plain view of their neighbors arguably rendered their detention unreasonably prolonged, then plaintiffs may proceed to make that showing.

**Proper Defendants**

Plaintiffs do not object to the dismissal of the Board of Commissioners of Johnson County. Indeed, the court has already terminated the Board as a defendant in this case based on the fact that the Circuit in *Harte I* affirmed the dismissal of the Board as a defendant and it had remained in the case only for purposes of vicarious liability under plaintiffs' state law claims against the individual defendants. Plaintiffs further state that they do not object to the dismissal of defendant James Cossairt, now deceased, in "recognition of defendants' assurance that they will not use an empty-chair defense at trial or blame [Mr.] Cossairt for the actions of other defendants." The court, then, dismisses plaintiffs' claims against defendant James Cossairt.[4]

Plaintiffs contend that Mark Burns, who was named as a defendant in Count II of the pretrial order, remains a proper defendant with respect to the three claims that remain for trial. While Mr. Burns was not present at plaintiffs' residence for the execution of the warrant, plaintiffs contend that there is evidence from which a reasonable jury could conclude that Mr. Burns "set in motion a series of events" that he knew or reasonably should have known would cause a violation of plaintiffs' constitutional rights. Specifically, plaintiffs highlight that Mr. Burns attended an early morning planning meeting on the day of the search and that Mr. Burns instructed the deputies who were searching plaintiffs' residence to "keep searching" when they called to inform him that they did not find marijuana in plaintiffs' hydroponic garden. The court

---

[4] In light of this assurance, defendants will be prohibited from using an empty chair defense at trial or otherwise blaming Mr. Cossairt for the actions of any defendants in this case.

agrees with plaintiffs that these facts are sufficiently tied to one or more of the claims in Count II and that Mark Burns remains a proper defendant in the case.

The court turns, then, to whether former Sheriff Denning is a proper defendant in the case at this juncture. All that remains in this lawsuit are three discrete claims set forth in Count II of the pretrial order.  Sheriff Denning is not identified as a defendant in Count II of the second amended complaint or in the pretrial order, despite the fact that plaintiffs, appropriately, specifically identified each individual defendant that they intended to hold liable for each specific claim.  Plaintiffs' failure to name former Sheriff Denning as a defendant in Count II is fatal to plaintiffs' attempt to hold former Sheriff Denning liable on Count II at this late stage of the litigation.  *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) (claims or theories not included in pretrial order are waived).  While plaintiffs assert in their submissions that former Sheriff Denning "set in motion a series of events" that ultimately led to a violation of plaintiffs' constitutional rights, that specific theory was clearly set forth in the pretrial order, but plaintiffs identified only defendants Pfannenstiel, Reddin, Cossairt, Blake and Burns under that theory of liability.

Plaintiffs concede that they never named former Sheriff Denning as a defendant for purposes of Count II, but assert that "manifest injustice" will result from "continuing to exclude" former Sheriff Denning.  To be clear, the court is not excluding former Sheriff Denning from the case.  Plaintiffs simply never included Sheriff Denning in Count II at any time in this lawsuit.  They never sought to amend the complaint or the pretrial order at any time in the last seven years to include Sheriff Denning in Count II.  In support of their "manifest injustice" argument, plaintiffs contend that former Sheriff Denning will suffer no prejudice if he is a

defendant because he is "fully on notice of the litigation and relevant facts." Clearly, former Sheriff Denning would suffer prejudice if plaintiffs were permitted to amend the pretrial order to add him as a defendant in Count II roughly six weeks before the second trial in this case and long after a trial on the merits of those claims in which Sheriff Denning was named as a defendant and on which he obtained a verdict in his favor. When that verdict was affirmed in October 2019, former Sheriff Denning no longer had any exposure with respect to plaintiffs' claims. Plaintiffs cannot reasonably assert for the first time on January 28, 2020 that Sheriff Denning should be included as a defendant on Count II and that he will suffer no prejudice as a result.

Plaintiffs further assert that amendment of the pretrial order is appropriate to prevent manifest injustice because, according to plaintiffs, they did not discover until trial "critical information" pertinent to Sheriff Denning's response to plaintiffs' post-search request for information as to why they were targets of the search. Specifically, plaintiffs assert that they learned at trial that former Sheriff Denning "relied on the advice of counsel in denying the family's request for information, which in turn resulted in the production of emails that contradicted his story." But plaintiffs have failed to tie this evidence to any claim in Count II and the court discerns no connection whatsoever between former Sheriff Denning's response to plaintiffs' post-search request for information, his reliance at trial on the advice of counsel in denying plaintiffs' request, the existence of emails contradicting that statement and the deputies' execution of the warrant or detention of plaintiffs. Plaintiffs, then, cannot establish manifest injustice by the court's refusal to amend the pretrial order. Simply put, we are well past the time for plaintiffs to expand the scope of the claims articulated in Count II to include a party who has

never been named as a defendant in that count. *See Monfore v. Phillips*, 778 F.3d 849, 851-52 (10th Cir. 2015) (no abuse of discretion in refusing to permit party to amend pretrial order on the eve of trial to change trial strategy; change would have required other party to prepare for an entirely different trial on a few days' notice); *Arias v. Pacheco*, 380 Fed. Appx. 771, 775-76 (10th Cir. 2010) (no abuse of discretion in refusing to permit amendment of pretrial order on eve of trial to add new theory of liability in search and seizure case where there was "no need" for plaintiffs to wait that long to seek amendment); *Wright v. City of St. Francis, Kansas*, 95 Fed. Appx. 915, 926 (10th Cir. 2004) (no abuse of discretion in refusing to permit amendment of pretrial order to assert individual capacity claims against police officers and police chief at summary judgment stage); *Jeffries v. Tulsa County Board of County Commr's*, 17 Fed. Appx. 952, 954 (10th Cir. 2001) (no abuse of discretion in refusing to permit amendment of pretrial order to assert new claim at trial where underlying facts and issues were within counsel's knowledge at the time of the pretrial conference); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1543 (10th Cir. 1996) (no abuse of discretion in refusing to permit amendment of pretrial order to assert fraud claim against defendant where only negligent misrepresentation claim had been asserted against that defendant but both claims were asserted against other defendants).

**Matters Resolved by First Jury**

During the January 24, 2020 telephone status conference with the parties, the court expressed its belief that the jury should be advised that that the search warrant in this case was valid; that the warrant authorized the deputies to search for marijuana in any form, including

personal use and paraphernalia; and that the deputies' authority to search for those items did not dissipate at any point during the duration of the search. Plaintiffs assert that the first and third statements are not correct.[5] Plaintiffs contend that the jury did not specifically find that the warrant was valid, only that plaintiffs did not meet their burden to prove that no one lied to procure it. Plaintiffs' argument, however, ignores that there are simply no other theories available to plaintiffs at this juncture to support any contention that the warrant is invalid. Because the first jury flatly rejected the one remaining theory that the warrant was invalid, this case must proceed with the understanding that the jury determined that the warrant was valid. In fact, the Circuit has construed the remaining claims with that understanding. *See Harte II*, 940 F.3d 498, 513 (10th Cir. 2019) ("[W]e believe that Judge Moritz's and Judge Lucero's opinions . . . permitted Plaintiffs to proceed to trial on the following federal claims if the jury determined the warrant was valid: . . . ").

Similarly, plaintiffs contend that the first jury did not find that the deputies' authority to search for items identified in the warrant did not dissipate at any point during the duration of the search. According to plaintiffs, the jury simply found that plaintiffs did not sustain their burden of proof to show that probable cause dissipated. Again, the Circuit's opinion in *Harte II* forecloses this argument. *See id.* at 522 ("At trial, the jury concluded that probable cause had not dissipated, but had instead existed for the duration of the search of Plaintiffs' home.").

---

[5] Plaintiffs also contend that the court's proposed instructions would confuse the jury. To the contrary, the court believes that jury will be confused if the court does not clarify these issues and the court is confident that it will be able to draft instructions that will appropriately and accurately clarify the issues that they are asked to decide and that will minimize any risk that the jury returns a verdict that is inconsistent with the first jury's verdict.

10

The trial of the remaining claims, then, will proceed with the understanding that the search warrant in this case was valid; that the warrant authorized the deputies to search for marijuana in any form, including personal use and paraphernalia; and that the deputies' authority to search for those items did not dissipate at any point during the duration of the search. Those matters were established in the first trial and the jury in the next trial is bound by them. *Laboratory Corp. of Am. Holdings v. Metabolite Laboratories, Inc.*, 410 Fed. Appx. 151, 159 (10th Cir. 2011) (defendant bound by jury's findings at trial and collateral estoppel precludes reexamining wisdom of that determination).[6] The parties' voir dire examinations of the jury, opening statements, questioning of witnesses, presentation of evidence and closing arguments should proceed with the understanding that these matters have been resolved and are not open for reexamination. The court will also instruct the jury as to these matters, but will consult with the parties as to the form and substance of those specific instructions.

**Other Evidentiary Issues**

Plaintiffs' witness list reflects an intent to elicit testimony at trial concerning plaintiffs' post-search efforts to determine why their residence was searched and their related requests for information concerning the same. Plaintiffs should be prepared to explain to the court in connection with the anticipated limine motions how such evidence relates to the three discrete claims in this case. Similarly, the parties should be prepared to explain to the court how evidence concerning defendants' initial arrival at the scene, initial entry into the residence

---

[6] The court declines plaintiffs' invitation to defer ruling on this issue (an issue that, in the court's mind, is subject to very little, if any, dispute) until the limine conference because the parties need to utilize these rulings in framing their motions in limine and preparing for trial.

(including the fact that plaintiff Robert Harte was ordered to the floor with an assault rifle pointed at or near him), and the type of apparel worn by defendants is relevant to the remaining claims. These facts have already been considered in connection with plaintiffs' excessive force claim and that claim is no longer part of this case.

**Settlement Conference**

That leaves plaintiffs' motion to compel defendants to participate in mediation. Defendants oppose the motion primarily on the grounds that mediation at this point would likely be futile. The court does not think it would be appropriate to require the parties to engage in private mediation when a mediator would necessarily spend a great deal of time—at significant expense to the parties—familiarizing himself or herself with the lengthy factual and procedural history of this case. As a result, the motion is denied. Nonetheless, the court is persuaded that a settlement conference with a magistrate judge might be beneficial at this point, particularly as the court has now clarified what parties remain in the case and what issues remain for trial. Toward that end, the parties are directed to contact Magistrate Judge Teresa J. James's chambers no later than February 25, 2020 for the purpose of scheduling a settlement conference with her.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' claims against defendant James Cossairt are dismissed with prejudice and that former Sheriff Denning is no longer a defendant in this case because plaintiffs have not named former Sheriff Denning as a defendant in Count II.

12

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiffs' motion to compel mediation (doc. 507) is **denied** but the parties shall contact Magistrate Judge James's chambers no later than February 25, 2020 to schedule a settlement conference with her.

**IT IS SO ORDERED.**

Dated this 18th day of February, 2020, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge